**Jimmy MARTINEZ & Robert E. Walk, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 719–92, 720–92.**

Court of Criminal Appeals of Texas, En Banc.

June 8, 1994.

Joel B. Johnson, Sinton, for appellants.

C.F. Moore, Dist. Atty., and Jay T. Kimbrough, Asst. Dist. Atty., Beeville, Dan Mo-

rales, Atty. Gen., and Will Pryor, Mary F. Keller, Jorge Vega and Dewey E. Helmcamp, III, Asst. Attys. Gen., Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANTS' PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellants, Jimmy Martinez and Robert Walk, are Bee County Commissioners. They were charged by information with the misdemeanor offense of violating TEX.REV.CIV.STAT. art. 6252–17 (Vernon Supp.1991),[1] generally known as the Open Meetings Act (hereinafter "Act"). The trial judge quashed the informations due to the State's failure to plead certain exceptions that would have permitted a closed meeting under the Act. The Corpus Christi Court of Appeals reversed the judgment of the trial court by holding that the informations adequately pleaded and negated all of the exceptions to the Act and, therefore, properly alleged the offense. *State v. Martinez,* 829 S.W.2d 365, 368 (Tex.App.—

Corpus Christi 1992). We affirm the judgment of the Court of Appeals on other grounds, as set forth below.

### I.

Section 2 of the Act provides: "Except as otherwise provided in this Act or specifically permitted in the Constitution, every regular, special, or called meeting or session of every governmental body shall be open to the public."[2] TEX.REV.CIV.STAT.ANN. 6252–17, § 2(a). Section 2 also contains several provisions that detail situations in which a meeting may be closed to the public or, alternatively, meetings that are exempt from coverage under the Act.[3] Appellants collectively refer to these provisions as "exceptions."

 In Appellants first and second grounds for review, they argue that these provisions are exceptions which, accordingly, must be pleaded or negated in the charging instrument. In an attempt to resolve this issue, the court of appeals discussed, in depth, whether the various provisions under §§ 2(b)–(t) were, in fact, exceptions to the open meeting mandate under the Act.[4] *See*

---

1. *See* now TEX.GOV'T CODE ANN. § 551.001 et seq. (Vernon Supp.1994).

2. The "Violations and Penalties" portion of the Act provides:

 Any member of a governing body who knowingly calls or aids in calling or organizing a special or called meeting or session which is closed to the public, or who knowingly closes or aids in closing a regular meeting or session to the public, or who knowingly participates in a regular, special, or called meeting or session which is closed to the public where a closed meeting is not permitted by the provisions of this Act, shall be guilty of a misdemeanor and on conviction is punishable by a fine of not less than $100 nor more than $500 or imprisonment in the county jail for not less than one month nor more than six months, or both. TEX.REV.CIV.STAT. art. 6252–17, § 4(a).

3. Under § 2, a meeting of a governmental body may be closed to some or all of the public in the following situations: exclusion of witnesses during hearings, private consultations between a governmental body and its attorneys regarding litigation or settlement matters, employer/employee relations, and certain school board meetings. On the other hand, meetings by non-governmental bodies, such as grand juries, and agencies wholly funded by the federal government are not subject to the Act. *See* subdivisions (b)–(t) of art. 6252–17, § 2.

4. Although it was not necessary to address the issue of pleading and negating exceptions in charging instruments, we feel that it is necessary to clarify portions of the court of appeals' opinion for the benefit of the lower courts. The court of appeals applied the common law of pleading, proving, and negating exceptions to offenses because Appellants were charged with violating a civil statute. *Martinez,* 829 S.W.2d at 366. However, the court's reliance on the common law is misplaced. The Texas Penal Code, and not the common law, applies to offenses defined by other statutes, unless the statute defining the offense provides otherwise. TEX.PENAL CODE ANN. § 1.03(b) (Vernon 1991).

 Under the Texas Penal Code, the charging instrument must negate the existence of an exception in the charging instrument. *Id.* § 2.02(b). However, § 2.02(b) was enacted prior to this Court's decision in *Studer v. State,* 799 S.W.2d 263 (Tex.Crim.App.1990).

 The negation of any exception to the offense is an element of the offense. TEX.PENAL CODE § 1.07(13)(D). In *Studer,* this Court held that the 1985 amendments to the Texas Constitution eliminated the necessity of pleading each and every element of an offense in the charging instrument in order to confer jurisdiction in the court. *Studer,* 799 S.W.2d at 272. Consequently, the argument can be made that it is no longer necessary to negate each and every exception to

*Martinez,* 829 S.W.2d at 367. After deciding that some provisions were exceptions and others were not, the court of appeals held that the informations properly pleaded and negated the exceptions, as determined by the court. However, such an analysis was unnecessary under the facts of this case.

### Texas Open Meetings Act

■ Section 2 of the Act provides:

[N]o closed or executive meeting or session of any governmental body *for any of the purposes for which closed or executive meetings or sessions are hereinafter authorized* shall be held unless a quorum of the governmental body has first been convened in open meeting or session for which notice has been given ... and during which open meeting or session the presiding officer has publicly announced that a closed meeting or session will be held and identified the section or sections under this Act authorizing the holding of such closed or executive session.

TEX.REV.CIV.STAT. art. 6252–17, § 2(a) (emphasis added).[5]

In their brief, Appellants claim that the Act does not require compliance with the above procedural steps if the proposed, closed meeting falls under one of the "exceptions" set forth in the Act. *Appellant's Brief,* p. 5. However, this is precisely the situation in which notice is specifically required.

A careful and plain reading of § 2(a) reveals that, if a closed meeting is authorized (i.e. an exception applies), the governing body must comply with the procedural steps enumerated in § 2(a).[6] On the other hand, if one of the exceptions does not apply, then

the closed meeting is violative of the Act regardless of whether the governing body complied with the procedural steps. Our interpretation is consistent with the public policy behind the Open Meetings Act that the public should be aware of which members of a governing body are present in a closed meeting and whether a quorum exists. *Cox Enterprises, Inc. v. Board of Trustees of the Austin Independent School District,* 706 S.W.2d 956, 959 (Tex.1986).[7] Appellants' construction of the Act would circumvent this purpose.

### II.

■ Turning to the facts of this case, the relevant portion of the informations specifically charge Appellants with violating the Open Meeting Act by:

[G]athering with members of the Bee County Commissioners' Court and having a verbal exchange between a quorum of members of the Bee County Commissioners' Court, during which public business and public policy over which the governmental body has supervision and control was discussed and considered, and *when they had knowledge that notice of the meeting had not been posted and that the body did not first convene in an open meeting then publicly announce that a closed meeting would be conducted.*[8]

The informations clearly charge Appellants with failing to comply with the procedural prerequisites contained in the latter portion of § 2(a) of the Act. As noted above, the governing body must comply with these procedures in order to properly hold a closed meeting. No exceptions exist for a failure to

---

an offense in the charging instrument, as required under § 2.02(b). However, we express no opinion on this issue, as it was not before us in this case.

5. Broken down specifically, these procedural requirements include: 1) convening an open meeting of a quorum of the governing body; 2) giving notice of the open meeting; 3) announcing in the open meeting that a closed meeting will take place; and 4) identifying the section under the Act that authorizes the closed meeting.

6. *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991) ("if the meaning of the statutory

text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.").

7. In *Cox,* the Texas Supreme Court has characterized several provisions of § 2 of the Act as exceptions. *See Cox,* 706 S.W.2d at 958. Because such a determination is not necessary to the resolution of this case, we express no opinion as to whether such provisions are in fact exceptions in the context of a criminal prosecution under the Act.

8. Emphasis added.

satisfy these requirements. Accordingly, whether the alleged exceptions under the remainder of § 2 of the Act have been pleaded or negated in the information is immaterial to the offense charged in this case. Under the informations, Appellants could be found guilty even if one of the alleged exceptions applied because their offense (failing to give notice) does not depend upon the exceptions. Appellants' first two grounds for review are overruled.

## III.

■ Appellants' final ground for review alleges that the information failed to provide Appellants with adequate notice of the charges against them. However, the informations clearly allege that Appellants failed to comply with the procedural requirements of the Act prior to holding a closed meeting. This provided adequate notice of the offense charged. Appellants' third ground for review is overruled.

We conclude that the informations properly alleged the offense. Consequently, the trial court erred in quashing the informations. Judgment of the Court of Appeals is affirmed.

CLINTON, Judge, concurring on appellant's petition for discretionary review.

We are confronted with informations purporting to charge two county commissioners with committing misdemeanor offenses denounced by the "Open Meeting Act" ("Act") extant in 1991.[1] In my judgment, the questions presented in this cause cannot reasonably and fairly be answered without carefully examining precursors to the Act to discern what the Legislature had in mind as it devel-oped the Act from a singular piece of legislation to the rather complex conglomeration from which the State drew its charging instrument.[2]

### I

### A

The Texas genesis of the former Act is Acts 1967, 60th Leg., Ch. 271, p. 597, effective May 23, 1967 (S.B. No. 94), codified as Article 6252-17, V.A.T.S. The caption explains purpose and outlines simple provisions of the Act, viz:

> "An Act to prohibit governmental bodies from *holding meetings which are closed to the public;* defining the term 'governmental body'; *making certain exceptions;* providing relief by mandamus or injunction to prevent closed meetings; *making unlawful certain acts pertaining to closed meetings and prescribing a penalty therefor;* ... repealing all laws in conflict; and declaring an emergency."

*Ibid.*[3]

Section 1(a) proclaimed:

> "Except as otherwise provided in this Act, every regular, special or called meeting or session of every governmental body shall be open to the public."

The "exceptions" alluded to include "deliberations" on certain subjects prescribed in Section 2(a) to which "[t]he provisions of this Act do not apply[.]" Section 3 authorized civil actions for mandamus or injunctive sanctions. Section 4 proscribed *three* kinds of acts and prescribed punishment therefor, viz:

> "Any member of a governing body [1] who wilfully *calls* or aids in calling or organiz-

---

1. See now V.T.C.A. Government Code, Chapter 551, § 551.001 et seq.

2. There are two separate charging instruments, one against each appellant. They are identical in content and the trial court consolidated both for purposes of hearing identical motions to quash. S.F. 4. A copy of the information is attached hereto as Appendix 1.

 Paragraph 10 in each motion to quash asserted:
 "The information ... appears to attempt to allege a violation of Art. 6252-17 VATS but fails to allege that any conduct of the Defen-dant does not fall within the exceptions set forth in the Act and is therefore invalid on its face and should be quashed."
 Motion to Quash Information, Tr., at 20–21.
 The trial court granted the motion quash only as to paragraph 10, because "the statute 6252-17[§ 2] ... starts off with except as otherwise provided. It appears to meet the criterion of the Code of Criminal Procedure of the Penal Code [sic] that requires that the State negate in their pleadings and allegations the exceptions to the statute." S.F. 24–25; Tr. 22.

3. All emphasis above and throughout this opinion is mine unless otherwise indicated.

ing a *special or called* meeting or session which is closed to the public, OR [2] who wilfully *closes* or aids in closing a *regular* meeting or session to the public, OR [3] who *participates* in a regular, special or called meeting or session which is closed to the public *without* causing or attempting to cause his *dissent* to be entered in the record or minutes of the governing body, *shall be guilty of a misdemeanor* and shall be fined [etc.]."

*Id.,* at 597–598 (note the third offense did not require a culpable mental state). Section 7 declared: "The importance of assuring that the public has the opportunity to be informed concerning the transactions of public business creates an emergency...." *Id,* at 598. Clearly the Legislature intended to outlaw and prevent the practice of governmental bodies holding closed meetings when transacting business on matters about which it deemed the public should be informed.

In its next two sessions the Legislature would amend the Act by revisions and additions, only two of which have some bearing on the issues in the instant cause.[4] The thrust of the public policy thus expressed was to prohibit closed meetings for any purpose other than that portion while the body was actually engaged in deliberating certain specifically prescribed matters.

Under the original Act as last amended before 1973, then, any member of a commissioners court committed an offense if he *"called"* a closed special meeting, *"closed"* a regular meeting, or *"participated"* without dissent to any such closed meeting to which the Act was applicable.

### B

The Legislature, apparently recognizing ever-increasing exemptions and additional "do not apply" provisions it was about to make, revamped sections 1, 2, 3A and 4 of the Act through Acts 1973, 63rd Leg., Ch. 31, p. 45 (H.B.3), to focus more on regulating

conduct of meetings, still insisting on open meetings but expressly permitting certain closed ones.

Section 1 defined germane terms much as they are in article 6252–17.

Section 2(a) incorporated the policy declaration in former section 1 with a revised former section 2, see *ante,* tying in the basic notice requirement in Section 3A, thus providing:

"Except as otherwise provided in this Act or specifically permitted in the Constitution, every regular, special, or called meeting or session of every governmental body shall be open to the public; and *no closed or executive meeting* or session of any governmental body *for any of the purposes* for which closed or executive meetings or sessions are *hereinafter authorized* shall be held *unless* [a quorum of] the governmental body has first been convened in open meeting or session for which notice has been given as hereinafter provided and during which open meeting or session the presiding officer has publicly announced that a closed or executive meeting or session will be held and identified the section or sections under this Act authorizing the holding of such closed or executive session."

*Id.,* at 45–46; compare article 6252–17, § 2(a), which is in all respects identical except for the bracketed language inserted by a subsequent amendment made by Acts 1987, 70th Leg., Ch. 549, p. 2211, § 2.

Section 3A reenacted previous notice provisions and expanded on notice of emergency meetings.

Section 4 tracked the former section 4, see *ante,* except that the Legislature abandoned the notion of a member registering dissent; it inserted instead "who *wilfully* participates in a regular, special, or called meeting or session which is closed to the public *where a*

---

**4.** See Acts 1969, 61st Leg., Ch. 227, p. 674 (amending format and clarifying "do not apply" provisions of Section 2(a), e.g., "to *that portion of a meeting* while ... the governmental body is *actually engaged*" in deliberating certain prescribed matters, and adding Section 3A to introduce requirement of posting "written notice of

the *date, place,* and *subject matter* of each meeting held by a governmental body;") Acts 1971, 62nd Leg. Ch. 381, p. 1401 (exempting certain matters considered by school boards); Acts 1971, 62nd Leg., Ch. 527, p., 1789 (identifying places where notices of meetings must be posted).

*closed meeting is not permitted by the provisions of this Act;"* further, it changed punishment to a fine of $100 to $500, confinement in county jail for one month to six months, or both. *Id.,* at 48; compare article 6252–17, § 4.[5]

### C

Before the court of appeals the State contended that "exceptions" in § 2 are not exceptions to the criminal offenses described in § 4(a) of the Act, in that as a matter of law they "do not affect and cannot negate the offense described." It pointed out that the issue here arises from "a gathering with *no notice whatsoever,*" whereas § 2 "exceptions" enumerate "topics that may be discussed in an executive session preceded with notice—not instances where *notice* is not required." Brief of the State, at 6–8 (emphasis in original).

Appellees supported the ruling by the trial court, contending that all matters provided after the opening mandate in § 2(a), *viz:* "Except as otherwise provided in this Act ... every regular, special, or called meeting ... shall be opened to the public.," constitute "exceptions to the criminal offense described in Section 4a [of the Act]," because they "dictate, as a matter of law, that the remainder of the Act shall not apply to those prescribed events;" therefore, unless the State alleges that conduct of a defendant did not come within a § 2 exception "there has been no pleading of any crime." Brief of the Appellee, at 4–5, 6.

The court of appeals majority began its analysis by exploring the common law, because "appellees were charged with violating a civil statute," to determine whether "the informations comply with these [discerned common law] requirements[.]" It rejected the contention of appellees that "every provision in § 2 is an exception," opining instead, "Those that are exceptions were properly pleaded." *State v. Martinez,* 829 S.W.2d 365, 366–367 (Tex.App.—Corpus Christi 1992). Upon completing its analysis the court of appeals accordingly concluded: "The charg-

ing instruments properly pleaded and negated all possible exceptions to the Open Meetings Act. The informations were therefore improperly quashed." *Id.,* at 368.

### D

We granted appellees' PDR to determine in essence whether the court of appeals erred in holding that provisions appellees claim are "exceptions" under the Act are not "exceptions to a criminal offense as that term is defined in Penal Code § 2.02," and that such provisions "need not be specifically pled in a charging instrument;" and in holding that the charging instrument "provided adequate notice ... of the charges against [appellees]."

### II

We must keep in mind that from the beginning the Legislature provided civil remedies for a breach of statutory mandates imposed by the Act, as well as penal sanctions for defined offenses. What may constitute a civil violation of the Act does not necessarily define a criminal offense. See *State v. Williams,* 780 S.W.2d 891, 893–894 (Tex. App.—San Antonio 1989), no PDR (not criminal offense to act on subject of discussion *dehors* agenda; action voidable only); *Toyah I.S.D. v. Pecos–Barstow I.S.D.,* 466 S.W.2d 377 (Tex.Civ.App.—San Antonio 1971) no writ history (action taken March 5, 1969 at a meeting excluding general public and interested parties declared "ineffectual"), holding approved in *Lower Colorado River Authority v. City of San Marcos,* 523 S.W.2d 641, 646 (Tex.1975) (deficient notice violative of open meeting law subjects action taken to judicial invalidation).

The same legislature which revised the Act in 1973 also enacted the "new" Penal Code. Acts 1973, 63rd Leg., Ch. 399, p. 883, § 1. Both became effective January 1, 1974. V.T.C.A. Penal Code, § 1.03(a) provides in pertinent part: "Conduct does not constitute an offense unless it is *defined as an offense* by statute[.]" Section 4 of the Act defines

---

**5.** The culpable mental state of "knowingly" replaced "wilfully" in Acts 1987, 70th Leg., Ch.

549, p. 2214, § 6.

offending conduct and other elements of the three penal offenses appellees allegedly committed.

Section 1.03(b) of the Penal Code makes the provisions of Titles 1, 2, and 3 of the code applicable to *"offenses defined by other laws,* unless the statute defining the offense provides otherwise." Thus Section 2.02 is applicable to article 6252–17, so that an exception *to an offense must be* "labeled by the phrase: 'It is an exception to the application of....'"[6] In the Act, none of the so-called "exceptions" in § 2 is expressly labeled as such. But more significantly, no such label appears in the definition of offenses in § 4.

The dictum of the majority that appellees could be found guilty for failing to comply with those "procedural prerequisites" in § 2(a) of the Act (and therefore "alleged exceptions" are "immaterial to the offense charged)," opinion at 56, is plainly at odds with § 4 itself. None of the three criminal offenses defined in § 4 identifies "failing to comply" with § 2 "procedural prerequisites" as an element of any one of the offenses, nor does any other provision of the Act.

At best, § 4 proscribes knowingly "calling," "closing" and "participating in" a closed meeting in circumstances "where a closed

meeting is *not* permitted by the provisions of this Act."[7]

Because closure is contrary to our public policy dictating that "every meeting of every governmental body shall be open to the public," § 2(a), whether a closed meeting is "permitted" depends more on the reason for closure than on compliance with "procedural prerequisites," as the majority would have it. Opinion, at 53. The controlling inquiry is whether the reason is to serve "any of the *purposes* for which [closure is] *hereinafter authorized,"* referring to "the section or sections under this Act *authorizing* the holding of such closed or executive session." § 2(a). Merely following "procedural prerequisites" is not enough to permit closure; § 2(a) allows closure only for "purposes" identified in substantive "authorizing" provisions elsewhere in § 2, and perhaps in other sections and subsections as well.[8] Thus compliance with "procedural prerequisites" will not legalize closure for "purposes" *other than those "authorized"* in the Act.

That compliance may serve to close a meeting for purposes of deliberating *"authorized"* matters is beside the point. The Act proscribes convening or conducting a closed meeting that is *not* permitted in terms of "authorized purposes." That there has been

---

**6.** Contrary to the notion expressed by court of appeals, see *ante,* at 59, these provisions of the Penal Code would supersede the analogous common law rule regarding pleading.

**7.** To include the clause in connection with the offenses respectively alleged in the first and second count is, in my view, gratuitously to describe each offense in a manner the statute does not require. That clause appears after the statutory definition of the third type of offense without any punctuation mark to indicate the clause attaches as well to the first and second offense. In light of evolution of the Act, it seems to me the clause was designed to replace the previously required "dissent" in favor of prohibiting a commissioner from participating in a regular, special of called meeting which is closed to the public *knowing that the closed meeting is not permitted.* Therefore, the first count charges an offense that flatly prohibits a county commissioner from knowingly calling and aiding in calling a *called* meeting which is closed to the public, and the second count redundantly prohibits one from knowingly closing and aiding in closing a *meeting* in that it is never alleged whether it was "a regular, special or called meeting," as required by § 4.

Nevertheless, I am prepared to accept that the clause does indeed qualify all three offenses. See now Government Code, § 551.144(a): "A member of a governmental body commits an offense if a closed meeting is not permitted under this chapter and the member knowingly [calls, closes, or participates in] the closed meeting[.]"

**8.** The revisers for the Texas Legislative Council cleared up any ambiguity of § 2(a) when it recast this requirement in § 551.101 of the Government Code, *viz:*

"If a closed meeting is *allowed* under this chapter, a governmental body may not conduct the closed meeting unless a quorum of the governmental body first convenes in an open meeting for which notice has been given as provided by this chapter and during which the presiding officer publicly:

(1) announces that a closed meeting will be held; and

(2) identifies the *section or sections* of this chapter under which the closed meeting is held."

Thus it was the "authorized purpose" which "permitted" a closed meeting, not the "procedural prerequisites" for convening it.

a failure to achieve compliance with "procedural prerequisites" under § 2 is not defined as a criminal offense of which appellees "could be found guilty," slip opinion, at 3. It is but a circumstance surrounding conduct of "calling," "closing," and "participating in" a closed meeting in violation of § 4, properly alleged as such pursuant to V.T.C.A Penal Code, § 6.02(a) and § 6.03(b).[9]

### III

Therefore, assuming *arguendo* only, that "permitted purposes" constitute "exceptions" to criminal conduct proscribed by § 4(a), notwithstanding they are not labeled as such, I agree with the court of appeals that the Legislature was not required to restate them in § 4, and perforce the State is not required specifically to negate them beyond alleging in its charging instrument "where a closed meeting was not permitted by the provisions of Article 6252–17[.]" See *State v. Martinez,* supra, at 367.

It follows that I also believe the information provides adequate notice to appellees of the charges leveled against them.

For those reasons the judgment of the court of appeals should be confirmed, and accordingly I join the judgment (but not the opinion) of this Court.

MALONEY, J., joins.

---

9. To mandate compliance with "procedural prerequisites" outlined in § 2(a) presupposes that "notice [of an open meeting or session] has been given as hereinafter provided [in § 3A]." § 2(a). § 4 does not define failure to give notice as a criminal offense.

According to the instant information there was not any notice whatsoever given by appellees.

However, failure to give proper notice or otherwise to comply with "procedural prerequisites" may be adjudicated on the civil side in an extraordinary proceeding to invalidate any action taken without notice and other "procedural prerequisites." See cases cited *ante,* at 59. Thus did the Legislature ensure that breach of those requisites is not without an enforceable remedy, albeit not criminal in nature.