Frank Lafayette BIRD, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–94–00966–CR, 01–94–00967–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 20, 1996.

Richard W. Schmude, Tomball, for appellant.

Calvin Hartman, Houston, for appellee.

Before WILSON, O'CONNOR and TAFT, JJ.

## OPINION

WILSON, Justice.

A jury found appellant, Frank Lafayette Bird, Jr., guilty of violating two ordinances of the City of West University Place (the City)—one relating to the registration of special events (trial court cause number 94–25783), and the other relating to the placement of signs on City easements (trial court cause number 94–25784). The trial court tried the two offenses together and we consider the appeals of the two companion cases together. We reverse the judgment in trial court cause number 94–25783 and order the prosecution dismissed. We reverse the judgment in trial court cause number 94–25784 and render a judgment of acquittal.

### Facts

On the afternoon of January 22, 1994, the anniversary of the Supreme Court's decision in Roe v. Wade,[1] a demonstration was held in the 2900 block of Cason in the City. At about 3:00 p.m., the City's police department received a complaint about the demonstrators. Officer Rudolf Rodriguez answered the call, and saw approximately 19 people at the location carrying signs and crosses. Some of the protestors were walking on the sidewalk in front of a particular house, and some were crossing the street to the other side of the block. The signs "made a reference to" a doctor who lived with his family at the house singled out by the protestors. Officer Rodriguez also saw a number of white crosses in the easement in front of the doctor's home. Appellant was among the protestors.

Officer Rodriguez spoke to one of the protesters, James Pratt, and gave him copies of the City ordinances relating to the registration of special events and the placement of signs on public rights of way. The officer learned that no one in the group had a special events registration, as required by the City ordinance.

The City's Chief of Police, Stephen Griffith, arrived. Chief Griffith called the protestors together and told them that they were violating the two City ordinances. He tried to give a copy of the special events ordinance to the group, but they refused to accept it. Chief Griffith then read the ordinance to them and told them they were violating the ordinance. He told the group they could remedy the violation by leaving or by reducing their number to less than 10 persons. According to the chief's trial testimony, the group indicated to the chief that "they were not going to comply with the ordinance." Appellant was in the group to which the chief spoke.

The chief also told the group they were violating the sign ordinance and asked them to remove the crosses. The group refused. At Chief Griffith's request, Officer Rodriguez pulled up the crosses, and put them in his patrol car. Appellant went to his car and got more crosses. He and Pratt put the crosses in the easement in front of 2913 Cason. Chief Griffith told his patrol staff to issue citations to appellant and Pratt.

1. 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

### Violation of Special Events Ordinance [2]

In six points of error, appellant challenges the constitutionality of the special events ordinance and asserts that the complaint "failed to negative [sic] the two exceptions to event registration," "is duplicitous in that it charges more than one offense in a single count," and is impermissibly vague because it "fails to aver sufficiently the 'one block area' of the 'special event.'"

#### 1. The Special Events Registration Ordinance

Article nine of the City's Code of Ordinances, entitled "Street Events and Residential Regulations," contains the following relevant provisions:

Sec. 13–301. Definitions.

The following terms, when used in this Article, shall have the meanings ascribed to them below . . . :

. . . .

*Low-impact pedestrian event* means a special event which includes only pedestrians (obeying normal pedestrian rules) and meets one or both of the following sets of circumstances:

(1) the event does not occur in a residential block, or

(2) if the event occurs in a residential block, it meets both of the following criteria: (i) no more than 15 persons participate, and (ii) the event does not occur in any particular block for more than 15 minutes, total. (Note: a low-impact pedestrian event may move from block to block, so long as no single block is occupied for more than 15 minutes. Neither the overall length of the route nor duration is otherwise limited.)

. . . .

*Special event* means any procession, gathering or other similar event upon a street where one or more of the following circumstances is present:

(i) Large Group in Small Area. Ten or more persons gather, or move as a group, in a one-block (or smaller) area, either on the roadway, on the sidewalk or on any other part of the street.

. . . .

Sec. 13–311. In General.

. . . .

(b) *Registration Required.* It shall be unlawful for any person to organize or participate in a special event if the special event has not been registered by this Article. Exceptions:

(1) This does not apply to an escorted procession which complies fully with Division 3 of this article.

(2) This does not apply to a low-impact pedestrian event.

(c) *Compliance With Article Required.* It shall be unlawful for any person to organize or participate in a special event in violation of any of the provisions of this Article.

Sec. 13–312. Registration: Preparation For Events.

(a) *Registration.* To register a special event, a person must:

(1) Fill-out [sic] the standard form.

CITY OF WEST UNIVERSITY PLACE, TEX., CODE OF ORDINANCES, ch. 13, art. IX (1993).

#### 2. The Complaint

The complaint against appellant for violation of the special event ordinance provided in part that appellant

did unlawfully, intentionally and knowingly organize and participate in a special event, to wit, a procession or gathering where

ten or more persons gather or move as a group in a one block area, to wit:

2900 BLOCK OF CASON

City of West University Place, Texas, on the sidewalk when the special event was not registered as required by Sections 13–301, 13–311, and 13–312 of Article IX of the Code of Ordinances of the City of West University Place, Texas, to wit:

Defendant failed to fill out the standard form.

---

2. Cause number 01–94–00966–CR.

### 3. Failure of complaint to negate exceptions to the registration requirement

In his third point of error, appellant asserts that the trial court erred when it denied "Defendant's Motion to Quash Complaint No. 1 [sic]." In this motion to quash, appellant asserted that the complaint was defective because it failed to negate the two exceptions to the registration requirement: escorted processions and low-impact pedestrian events.

The State asserts that for two reasons, appellant has not provided a record sufficient to show error requiring reversal. First, the State argues that because the appellant's appeal to the county court from the municipal court was a trial de novo,[3] "appellant's motions to quash filed in the West University Municipal Court preserve nothing for review." The record reflects, however, that appellant's motions to quash were properly filed and were ruled on by the trial judge of County Criminal Court at Law Number 2.

■ The State's second reason for asserting that the appellant has not provided a sufficient record is based on the fact that appellant filed his motions to quash the special events complaint (trial court cause number 94–25783) under the cause number for the companion case involving the violation of the sign ordinance (trial court cause number 94–25784). The two causes were tried together. The State argues that there is no evidence to suggest the motions to suppress relating to cause number 94–25783 were ever properly filed or ruled on by the trial court. However, "Defendant's Motion to Quash Complaint No. 1 [sic]" contains the following notation, signed by the trial judge and dated September 21, 1994: "Denied D's motion to quash 1–4." It is clear that the motions relating to the violation of the special event ordinance were ruled on by the trial court. The fact that the motions appear in the transcript of cause number 94–25784 does not preclude us from considering these motions. We hold that error was preserved, and that appellant has provided a record sufficient for us to consider this point of error.

■ We agree with appellant that the trial court erred in denying this motion to quash. A charging instrument must allege all essential elements of an offense. *State v. Martinez*, 829 S.W.2d 365, 366 (Tex.App.— Corpus Christi 1992), *aff'd*, 879 S.W.2d 54 (Tex.Crim.App.1994); *see also McElroy v. State*, 720 S.W.2d 490, 492 (Tex.Crim.App. 1986) (to be valid, a charging instrument must negate all essential and constituent elements of the offense sought to be charged). To adequately allege all elements of an offense, the instrument must negate every exception to the offense. *Martinez*, 829 S.W.2d at 366; *see also McElroy*, 720 S.W.2d at 492. The effect of failing to negate an exception to an offense is the same as failing to allege an essential element of the offense. *Rosamond v. State*, 730 S.W.2d 147, 148 (Tex.App.— Corpus Christi 1987, no pet.). When an indictment does not facially allege a complete offense and was objected to as substantially defective, the defendant "will undoubtedly be entitled to a new trial based upon trial error for potentially any number of issues, including lack of notice for due process purposes." *Fisher v. State*, 887 S.W.2d 49, 56 (Tex.Crim. App.1994).

■ Here, the registration requirement of the City's street event ordinance contains two exceptions: escorted processions and low-impact pedestrian events. Neither exception was negated in the complaint. Thus, the complaint did not adequately allege all elements of an offense.

■ The State argues that the complaint is not defective because the particularity in pleading that is required for an indictment or an information is not required for a complaint. *See Kindley v. State*, 879 S.W.2d 261, 263 (Tex.App.—Houston [14th Dist.] 1994, no pet.). However, a complaint used as a charging instrument must nonetheless allege all the essential elements of an offense. *See Honeycutt v. State*, 627 S.W.2d 417, 422 (Tex. Crim.App.1981) (when culpable mental state was element of municipal offense of negligent collision, failure to allege that element in the complaint rendered complaint fundamentally defective; complaint ordered dismissed);

---

3. *See* Tex.Code Crim.Proc.Ann. art. 44.17 (Vernon    Supp.1996).

*Adams v. State,* 524 S.W.2d 67, 67 (Tex.Crim. App.1975) (complaint that did not allege essential elements of offense was fundamentally defective); *Pollard v. State,* 687 S.W.2d 373, 374 (Tex.App.—Dallas 1985, pet. ref'd) (because culpable mental state was element of municipal offense of sleeping in public, failure to allege that element rendered complaint fundamentally defective; complaint ordered dismissed). We hold that the complaint was defective.

■ We also hold that the defective complaint did not confer jurisdiction over the trial court. Until 1985, if an element of an offense was omitted from an indictment or information, the trial court never acquired jurisdiction. *See Labelle v. State,* 692 S.W.2d 102, 105 (Tex.Crim.App.1985). Such an error was said to be fundamental, and a conviction based upon an indictment or information that contained such error—and thus failed to invoke the trial court's jurisdiction—was void. *Id.*

In 1985, however, our State's constitution was amended to provide: "The presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Tex. Const. Art. V, § 12. Also in 1995, the Texas Legislature amended article 1.14 of the Code of Criminal Procedure to provide:

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the ·merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. . . .

Tex.Code Crim.Proc.Ann. art. 1.14(b) (Vernon Supp.1996). In *Studer v. State,* the Court of Criminal Appeals held, based on the language of article five, section 12, that an indictment (or information) was still an indictment (or information) even though it was flawed by matters of substance, such as the absence of an element. 799 S.W.2d 263, 271 (Tex.Crim.App.1990). The court further noted that, pursuant to the amendment to article five, section 12, jurisdiction is conferred on the trial court by the presentment of an indictment or information, and held that even an indictment or information containing a defect of substance was sufficient to confer jurisdiction on the trial court. *Id.* at 268, 272. The court also noted that the amendment to article 1.14(b) provided that "substance exceptions be raised pre-trial or otherwise the accused has forfeited his right to raise an objection on appeal or by collateral attack." *Id.* at 268.

In *Huynh v. State,* the court considered whether article 1.14(b) applied to a *complaint* used as a charging instrument in municipal court. 901 S.W.2d 480, 481 (Tex. Crim.App.1995). The court of appeals had held that, pursuant to article 1.14(b), the defendant had waived any error associated with alleged defects in the complaint because he had not raised those defects before the date trial commenced. The Court of Criminal Appeals reversed the court of appeals, holding that the "express and limited" language of article 1.14(b) specifically addresses indictments and informations, but does not mention complaints, and that complaints were not, therefore, covered by article 1.14(b). *Id.* at 481. The court thus allowed the defendant to raise complaints about defects in the complaint for the first time on appeal. *Id.* at 483.

■ Nothing in the Texas Constitution addresses complaints. *Huynh,* 901 S.W.2d at 481 n. 3. Article five, section 12, which provides that the presentment of an indictment or information to a court invests the court with jurisdiction over the cause, is, by its "express and limited language," limited only to indictments and informations. We conclude, based on *Huynh,* that article five, section 12, is therefore inapplicable to complaints. Thus, although the presentment of a defective *indictment or information* invests the trial court with jurisdiction, it does not follow that the presentment of a defective *complaint* invests the trial court with jurisdiction. Under *Huynh,* defendants charged by complaint in municipal court may raise alleged defects in the complaint for the first time on appeal, even though, after the 1985 amendments to article five, section 12, of the Texas Constitution and to article 1.14(b) of the Code of Criminal Procedure, defendants

charged by indictment or information could no longer raise such complaints for the first time on appeal. We therefore conclude, again based on *Huynh,* that if a complaint does not allege all the elements of an offense, the complaint is not a valid charging instrument, it does not invoke the jurisdiction of the trial court, and is therefore void. *See, e.g., McElroy,* 720 S.W.2d at 492 (holding in a case predating the amendment to article five, section 12, that "[t]o be a valid charging instrument and to invoke the trial court's jurisdiction, an indictment must allege all essential and constituent elements of the offenses sought to be charged").

We sustain appellant's third point of error. Because of our disposition of this point, we need not address appellant's remaining points in cause number 01–94–00966–CR.

## 6. Conclusion

We reverse the judgment in trial court cause number 94–25783 and order the prosecution dismissed.

### Violation of the Sign Ordinance [4]

In his first point of error, appellant challenges the constitutionality of the City's sign ordinance. He also argues that the evidence is insufficient to support his conviction, and asserts the trial court erred in denying his motions to quash. We agree with appellant that the evidence is legally insufficient.

## 1. The Sign Ordinance

The City's sign ordinance provides, in relevant part:

Sec. 3–31. Definitions.

. . . .

*Sign* shall mean any outdoor display, design, pictorial or other representation, which shall be so constructed, placed, attached, painted, erected, fastened or manufactured in any manner whatsoever so that the same shall be used for advertising. The term "sign" shall include the sign structure or vehicle to which it may be connected or affixed, but *the term "sign" shall not include any object until it remains stationary for three hours or more.*

Sec. 3–34. City land, easements, etc.

4. Cause number 01–94–00967–CR.

(a) It shall be unlawful for any person to place or maintain a sign of any type, except official signs and notices, in, on, or over any land, easement, right of way or other area controlled by the City unless the placement is authorized by: (i) a permit issued by the city council or, (ii) in the case of high-clearance banners only, a registration with the traffic control officer. As provided by TEX.REV.CIV.STAT. art. 2372cc, signs not authorized by state law are prohibited on public road rights of way, and any permit issued for a sign in violation of said art. 2372cc is void. The prohibitions and penalties prescribed by this Code do not apply to any conduct prohibited by said art. 2372cc.

CITY OF WEST UNIVERSITY PLACE, TEX., CODE OF ORDINANCES, ch. 3, art. III (1993) (second emphasis added).

## 2. The Complaint

The complaint against appellant for violation of the sign ordinance provided in part that appellant

did unlawfully, intentionally and knowingly place and maintain a sign, to wit:

display, an outdoor sign, figure, cross,

that is designed, intended or used to inform, and the sign was not an official sign or notice, and the sign was placed or maintained in, on, or over any land, easement, right of way or other area controlled by the City of West University Place, Texas, to wit:

2900 BLOCK OF CASON

and the placement was not authorized by a permit issued by the City Council of the City of West University Place, Texas.

## 3. Sufficiency of the evidence

In his ninth point of error, appellant asserts the evidence is legally insufficient to support the jury's finding of guilt. We agree.

▌ The ordinance specifies that an object is not a sign unless it has remained stationary for three hours or more. Thus, to be "signs" subject to the ordinance, the crosses had to have been stationary for at least three hours. There is no evidence that the crosses had been stationary for that

amount of time. The record reflects that there were crosses in the ground when Officer Rodriguez arrived at the protest site shortly after 3:00 p.m. There is no absolutely no evidence in the record to establish how long the crosses had been in the ground before Officer Rodriguez's arrival.[5] There is, therefore, absolutely no evidence that the crosses were "signs" as defined by the ordinance.[6] Appellant could not, as a matter of law, violate the ordinance if the crosses were not signs.[7]

We sustain point of error nine. We reverse appellant's conviction in trial court cause number 94–25784 and render a judgment of acquittal. Because of our disposition of this point of error, we need not address appellant's remaining points in cause number 01–94–00967–CR.

---

5. Appellant testified he arrived at the protest site at about 2:00 p.m. There is no evidence to controvert this testimony. Another protestor, Tama Cravey, testified that she arrived at the 2900 block of Cason at about 2:00 p.m., and that appellant arrived after that.

6. It is not clear whether appellant was cited because of the crosses that were in the easement when Officer Rodriguez arrived at the scene, or for the second set of crosses that appellant placed in the ground after Officer Rodriguez confiscated the first set. However, neither set of crosses meets the definition of "sign." It is undisputed that the second set of crosses were in the ground only a few minutes before appellant was cited for violating the sign ordinance. There is no evidence that appellant placed the first set of crosses in the ground. There is no evidence that the first set of crosses was in the ground for at least three hours.

7. In his original brief, appellant asserts the evidence was insufficient to support his conviction. However, appellant first raises the argument that the crosses were not "signs" because they were not stationary for three hours in his reply brief. Even though this precise issue was not properly raised in appellant's brief, we may, in the interest of justice, review unassigned error. *Perry v. State,* 703 S.W.2d 668, 670 (Tex.Crim.App.1986).