Richard Brenton TOBIAS

v.

The STATE of Texas.

No. 2–93–386–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 5, 1994.

William H. 'Bill' Ray, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall, Charles Mallin, Asst. Chiefs Appellate Section, Steven Conder, Asst. Dist. Atty., for appellee.

Before PAUL W. NYE, PRESTON H. DIAL, Jr., and JACKSON B. SMITH, Jr., JJ. (All Retired) (Sitting by Assignment).

## OPINION

PRESTON H. DIAL, Jr., Justice (Retired).

Richard Tobias was convicted by a jury of six counts of the felony offense of coercion of a public servant. See TEX.PENAL CODE ANN. § 36.03(a)(1), (b) (Vernon 1994). The jury assessed Tobias's punishment at seven years' confinement on counts one through three, and six years' confinement on counts four through six.

In five points of error [1] Tobias contends: the evidence is insufficient to prove his guilt because the State failed to negate a statutory exception to the offense of coercion of a public servant; the State should not have been permitted to amend the indictment to include a negation of the statutory exception; the enforcement of the coercion statute violated Tobias's First Amendment rights; the indictment violated Tobias's due process rights because it does not provide him with sufficient notice of the specific actions he allegedly desired the complainants to take; and the indictment violated Tobias's equal protection rights because he was subjected to improper selective prosecution.

We affirm the trial court's judgment.

Although the fact situation underlying these offenses began much earlier, the State alleged that in 1992 Tobias made the threats for which he was convicted. The three complainants involved in these transactions were justices on the Court of Appeals for the Second Court of Appeals District, in Fort Worth, Texas.[2] Tobias was convicted of making two separate threats to each of the three justices, all of whom testified at Tobias's trial.

In March 1992, Tobias had a civil appeal pending in the Second Court of Appeals.[3] Tobias's suit involved his receipt of a failing grade as a nursing student at the University of Texas at Arlington (U.T.A.). Tobias was appealing the action of the trial court in dismissing Tobias's mandamus action, seeking to compel the University of Texas at Arlington School of Nursing to provide him with records pursuant to the Texas Open Records Act. The panel assigned to hear Tobias's appeal consisted of Justice David Farris, Justice Larry Meyers[4], and Justice

1. Richard Tobias filed two pro se supplements to his counsel's brief. These documents and the two new points of error and legal authorities raised therein, will be addressed later in this opinion.

2. On January 10, 1994, the Supreme Court of Texas assigned the undersigned three visiting justices to participate in the adjudication of this cause. See TEX.GOV'T CODE ANN. § 74.003 (Vernon 1988 & Supp.1994). None of the current justices on the Second Court of Appeals have participated in any manner in the instant appeal.

3. Richard Tobias v. University of Texas System and University of Texas at Arlington School of Nursing, No. 2–91–215–CV (Tex.App.—Fort Worth May 13, 1992, writ denied) (not designated for publication).

4. Additionally, Justice Meyers had previously been a member of the panel of the Second Court of Appeals which affirmed a summary judgment in favor of U.T.A. against Tobias, based upon his receipt of a failing grade in a nursing course. Tobias v. University of Texas at Arlington, 824 S.W.2d 201 (Tex.App.—Fort Worth 1991, writ

Sam Day. Tobias acted pro se in that appeal.

On March 18, 1992, Tobias filed his second supplemental brief, which contained the following statement:

> Given that the Courts will not hear grade appeals or teacher malpractice suites [sic]: *Will I have to exercise my Right to Keep and Bear Arms to obtain these rights? If so, I will fight, kill and die to obtain them!* This is not a threat it is a FACT! I will have this grade changed no matter the cost in life, money and time and yes after eight years and $50,000 dollars, *I am prepared to use gun point and death if needed!* But before I resort to my guns I will file at least two more suits. Gebhardt is lying and I can prove it if given the chance! My father now has cancer, my uncle has had a heart attack, and Grandma is 88. Will they live long enough to see me graduate? I hope so, but the decision is yours today! [Emphasis added.]

Justices Meyers, Farris, and Day all testified that after this document was filed, the justices spoke among themselves, and they felt concerned and threatened. Specifically, Justice Day believed this threat concerned his responsibility to decide Tobias's appeal. Nonetheless, the justices did not at that time contact any law enforcement agencies.

Tobias's case was submitted to the court without oral argument on April 15, 1992.[5] On May 13, 1992, the Court of Appeals rendered a decision in Tobias's appeal, affirming the trial court's judgment. (*See* footnote 3, *infra* ) The opinion was authored by Justice Sam Day.

On May 21, 1992, Tobias filed a motion for rehearing which contained the following statement:

> If I should continue to loose [sic] as a result of their lies and tricks in court, *I will seek vengeance at gun point!* You

must understand that after eight years and $50,000 that I am quite tired of all the lies and tricks. You must also understand that I can prove absolutely that I passed that course. [Emphasis added.]

All three justices testified they perceived this statement to be another threat of violence, and Tobias was attempting to coerce them into changing their opinion. Justice Meyers stated he felt that Tobias's two statements were threats to do violence, which could result in death or potential death of an individual. However, the justices did not at that time contact the police.

On July 1, 1992, the police were first notified about Tobias's threats. On that date, another person opened fire in the courtroom of the Second Court of Appeals, killing two attorneys and injuring two justices and another attorney. Because of the two statements quoted above, Court of Appeals personnel notified the police about Tobias's recent threats, and he was initially suspected in that case. (Another individual was soon arrested and was later convicted in that shooting.)

Tobias filed his "Notice Of Intent To File Writ Of Error" on August 26, 1992. This document was filed in the Second Court of Appeals and contained the following statement:

> The truth is the lie and the lie is the truth. Will the sun rise in the East? Who knows any more because the Courts have not ruled upon it. Only a fool would think that you could sue the State in it's own Courts and win. *Thus I am fool, but very well armed fool. So beware the People will not tolerate these Crimes for long.* [Emphasis added.]

The deputy clerk who received this document from Tobias testified she became concerned because attached to the document were "pictures of men with their heads blown." [6]

---

denied), *cert. denied,* — U.S. —, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993). However, all references in the case at bar to Tobias's suit against U.T.A. refer to No. 2–91–215–CV.

5. Although Tobias was present in the courtroom on submission date, he was not permitted to

present oral argument because it had not been properly requested by him.

6. In this document, Tobias asserted "[t]he Courts no longer protect the rights and freedoms of the People from infringement by the Government. The Courts are protecting the Government from

Following this incident, the justices notified the police. Tobias was charged with the same two counts of coercion against all three justices. These charges were based upon the first two statements previously quoted. The indictment alleged these threats were made in an attempt to influence the individual justices in their participation in Tobias's appeal which was pending before the Second Court of Appeals.

The Penal Code provides, in pertinent part:

### Sec. 36.03. Coercion of Public Servant or Voter

(a) A person commits an offense if by means of coercion he:

(1) influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty;

. . . .

(c) It is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an official action taken by the member of the governing body. For the purposes of this subsection, the term "official action" includes deliberations by the governing body of a governmental entity.

TEX.PENAL CODE ANN. art. 36.03 (Vernon 1994).

■ In his first point of error, Tobias asserts the evidence is insufficient to prove the negation of the statutory exception of article 36.03(c).[7] Tobias contends the State failed to meet its burden of proof of showing beyond a reasonable doubt that Tobias's actions were not official actions committed by him while he was a member of the governing body of a governmental entity.[8]

In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

---

the People. We have a Government of the Government by the Government for the Government."

Tobias recited that an example of this is the Warren Report which analyzed the assassination of President John F. Kennedy. Attached to Tobias's "Notice Of Intent To File Writ Of Error" is his three-page opinion discussing the effects a bullet has on a body, along with several autopsy photographs. The vivid and explicit pictures showed the projectiles of a .45 caliber pistol and what it could do to the human body, together with a forensic diagram demonstrating a bullet entering a fleshy substance.

**7.** Tobias's point of error is two-fold, challenging the trial court's action in overruling Tobias's motion for instructed verdict made after the State rested its case-in-chief, and the sufficiency of the evidence to sustain a finding of guilt.

In his motion for instructed verdict Tobias asserted the State failed to establish a prima facie case; specifically, the State failed to prove *intent and knowledge by Tobias.* On appeal, Tobias focuses solely on the alleged failure of the State to negate the statutory exception of section 36.03(c). In reviewing the denial of Tobias's motion for instructed verdict, we are to consider all the evidence introduced at trial, in the light most favorable to the verdict. *See Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990).

**8.** Section 2.02 of the Penal Code provides:

(a) An exception to an offense in this code is so labeled by the phrase: "It is an exception to the application of . . . ."

(b) The prosecuting attorney must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception.

TEX.PENAL CODE ANN. § 2.02 (Vernon 1994).

The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense's evidence "outweighs" the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App. 1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

Regarding Tobias's suit against U.T.A., Justice Larry Meyers testified as follows:

Q. In your understanding of the suit, was Richard Tobias suing as an individual?

A. Yes, he was suing in an individual capacity.

Q. Was he—within this case against the University of Texas, was he a student at the University of Texas?

A. It's my understanding from what he indicated—or was indicated in the briefs he was a student there, yes, sir.

Q. To your knowledge, had he ever represented that he was an elected official or an employee or a governmental agent or a public servant in bringing this case?

A. No, nor did I draw that conclusion exclusive with what he filed.

Q. So he was a citizen suing as a citizen is your understanding of his capacity?

A. Exactly.

Justice David Farris testified that in the underlying suit against U.T.A., Tobias never represented himself to be a member of a governing body of a governmental entity.

Additionally, the substance of Tobias's second supplemental brief, his motion for rehearing, and his "Notice Of Intent To File Writ Of Error" all reflect that Tobias was complaining of U.T.A.'s actions concerning a grade dispute between U.T.A. and Tobias in his capacity as a nursing student.

Tobias did not testify at trial.

Tobias contends that there is no evidence that he was not in fact engaged in an official action as a member of a governing body of a governmental entity. We disagree with this contention. The evidence recited above established that when Tobias filed his documents with the Second Court of Appeals, he was acting in his capacity as a student at U.T.A. rather than as a member of a governing body of a governmental entity.

After examining the evidence in the light most favorable to the jury verdict, we find that *a rational trier of fact could have found beyond a reasonable doubt that the State proved the essential elements of the offense* of coercion of a public servant and negated its statutory exception. We overrule Tobias's first point of error.

█ In his second point of error, Tobias contends the trial court erroneously allowed the State to amend the indictment, when the original indictment did not allege an offense.

On July 12, 1993, Tobias filed a motion to quash the indictment on the grounds it failed to negate the existence of the statutory exception to the offense of coercion of a public servant. *See* Tex.Penal Code Ann. § 36.-03(b), and footnote 8 herein.

In response to this motion, on July 20, 1993 the State filed a motion to amend the indictment to include a negation of the statutory exception. After a hearing at which Tobias objected to the amendment, on July 23, 1993 the trial court entered an order approving and directing amendment of the indictment.[9]

Tobias's argument on appeal appears to be two-fold:

● The original indictment was fatally defective and void because it did not comply with the law concerning negation of statutory exceptions. He argues the void indictment deprived the trial court of jurisdiction to permit amendment of the indictment.

● The court's action allowing the State to amend the indictment violated Tobias's right not to be prosecuted except on an indictment

9. The trial court's order was signed more than ten days before the August 10 trial date, as required by Tex.Code Crim.Proc.Ann. art. 28.10(a) (Vernon 1989). *See Sodipo v. State,* 815 S.W.2d 551, 556 (Tex.Crim.App.1991) (op. on reh'g) (failure to grant defendant the mandatory ten-day response time after amendment of indictment is reversible error).

from a grand jury, citing U.S. CONST. amend. V, and TEX. CONST. art. I, § 14.

Tobias concedes the State may be allowed to amend substantial averments in an indictment without presentation to a grand jury; however, he contends that in the present case he was not charged by a voidable indictment, but a totally *void* indictment. We disagree.

The negation of an exception to an offense is defined to be an element of that offense. TEX.PENAL CODE ANN. § 1.07(a)(22)(D) (Vernon 1994) (formerly § 1.07(a)(13)(D)); *Labelle v. State*, 692 S.W.2d 102, 105 (Tex.Crim.App.1985). The failure to allege an element of an offense in an indictment is a defect of substance. *Studer v. State*, 799 S.W.2d 263, 268 (Tex.Crim. App.1990). Article 28.10(a) of the Code of Criminal Procedure provides that, "[a]fter notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences." TEX. CODE CRIM.PROC.ANN. art. 28.10(a) (Vernon 1989).

In 1985, article 1.14 of the Texas Code of Criminal Procedure, and Art. V, sec. 12 of the Texas Constitution were amended.[10] The amendments did not on their face change the long-standing precedent that failure to allege an element of an offense in an indictment is a defect of substance. *Studer*, 799 S.W.2d at 268. Rather, the changes related to the effect of a substantive defect in an indictment. The Court of Criminal Appeals in *Studer* concluded that because article 28.10 clearly allows for the amendment of any matter of form or substance in an indictment, an indictment need not plead each constituent element of an offense to charge a person with the commission of an offense. *Id.* at 271.

Accordingly, article 28.10 provided the method by which the State in the instant case could amend the indictment to include the language pertaining to the negation of the statutory exception to the offense. Nonetheless, Tobias asserts the trial court never acquired jurisdiction over the case because the original indictment did not contain an element of the offense. Tobias's theory is directly controverted by the express language of the amendment to article V, section 12 which provides that "presentment of an indictment or information to a court invests the court with jurisdiction of the cause." TEX. CONST. art. V, § 12; *see also Aguilar v. State*, 846 S.W.2d 318, 319-20 (Tex.Crim.App. 1993) (notwithstanding unobjected to defective complaint, trial court had jurisdiction over information under art. V, sec. 12(b)).

The cases relied upon by Tobias in support of his contention that the trial court lacked jurisdiction were decided prior to the decision in *Studer* and prior to the 1985 amendments. *See Ex parte Dickerson*, 549 S.W.2d 202 (Tex.Crim.App.1977); *Rutherford v. State*, 74 Tex.Crim. 617, 169 S.W. 1157 (Tex. Crim.App.1914); *Bates v. State*, 12 Tex.Ct. App. 26 (1882); and *Rosamond v. State*, 730 S.W.2d 147, 149 (Tex.App.—Corpus Christi 1987, no pet.)[11]. Moreover, as mentioned by the State, the decisions in *Rutherford* and *Bates* were construing a statute which expressly prohibited the amendment of a matter of substance in an indictment. *Rutherford*, 169 S.W. at 1158; *Bates*, 12 Tex.Ct.App. at 26-27. Therefore, we do not find these cases lend support to Tobias's claim that the trial court lacked jurisdiction to permit amendment of the indictment.

Tobias cites *Lopez v. State*, 846 S.W.2d 90, 93-94 (Tex.App.—Corpus Christi 1992, pet. ref'd) for the proposition that failure to negate a statutory exception is the same as

---

**10.** Art. V, sec. 12 provides, in pertinent part:

(b) An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.
TEX. CONST. art. V, § 12.

**11.** Although *Rosamond* was decided after the 1985 amendments, the court based its holding upon a case which was tried before the 1985 amendments. *See McElroy v. State*, 720 S.W.2d 490, 492 (Tex.Crim.App.1986).

failing to allege the essential elements of the offense and renders the indictment void. Although *Lopez* contains this language, we find the case is distinguishable because that court held the barratry statute under which the appellant was prosecuted *contained no statutory exceptions* as labeled by Penal Code section 2.02. *Id.* (emphasis added). Accordingly, the court did not address the specific issue before us.

We therefore reject Tobias's contention that the original indictment was fatally defective and void because it did not comply with the law concerning negation of statutory exceptions, and that the void indictment deprived the trial court of jurisdiction to permit amendment of the indictment.

■ The other argument contained in Tobias's second point of error is that the amendment charged a new offense, and violated his right not to be prosecuted except on an indictment from a grand jury.

The Code of Criminal Procedure provides:

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX.CODE CRIM.PROC.ANN. art. 28.10(c) (Vernon 1989).

The Texas Court of Criminal Appeals interpreted this provision in *Flowers v. State*, 815 S.W.2d 724 (Tex.Crim.App.1991), and held that the amendment of an indictment changing an element of the offense does not either charge a different offense or prejudice any substantial rights of the defendant. *Id.* at 728–29. A "different offense" means a different statutory offense since, although a change in an element of the offense changes the evidence required to prove an offense, it is still the same offense. *Id.* at 728. Additionally, in determining whether an amendment changing an element affected a substantial right, the court held that in most cases an amendment is permissible where it is made on the basis of the same incident upon which the original indictment is based. *Id.* at 729.

In the case at bar, both the original and amended indictments were based upon the same incidents, and alleged violations by Tobias of the same Penal Code section. We find no support in Tobias's claim that the court's action allowing the State to amend the indictment violated Tobias's rights under U.S. CONST. amend. V or TEX. CONST. art. I, § 14.

Lastly, in a recent opinion the Court of Criminal Appeals made the following comment concerning the issue of pleading and negating exceptions in charging instruments:

> [4] Although it was not necessary to address the issue of pleading and negating exceptions in charging instruments, we feel that it is necessary to clarify portions of the court of appeals' opinion for the benefit of the lower courts....
>
> Under the Texas Penal Code, the charging instrument must negate the existence of an exception in the charging instrument. [TEX.PENAL CODE ANN.] § 2.02(b). However, § 2.02(b) was enacted prior to this Court's decision in *Studer v. State*, 799 S.W.2d 263 (Tex.Crim.App.1990).
>
> The negation of any exception to the offense is an element of the offense. TEX.PENAL CODE § 1.07(13)(D). In *Studer*, this Court held that the 1985 amendments to the Texas Constitution eliminated the necessity of pleading each and every element of an offense in the charging instrument in order to confer jurisdiction in the court. *Studer*, 799 S.W.2d at 272. *Consequently, the argument can be made that it is no longer necessary to negate each and every exception to an offense in the charging instrument, as required under § 2.02(b).* However, we express no opinion on this issue, as it was not before us in this case.

*Martinez v. State*, 879 S.W.2d 54, 55 n. 4 (Tex.Crim.App.1994) (emphasis added). Although this language is dicta, we believe the viewpoint espoused in *Martinez* is consistent with our holding in the instant case.

We overrule Tobias's second point of error because we hold the trial court properly granted the State's motion to amend the indictment.

Tobias's third point of error alleges the trial court erroneously denied his motion to quash the indictment based upon his right of freedom of speech as guaranteed by the First Amendment to the United States Constitution.

In enacting a statute, it is presumed that compliance with the constitutions of this state and the United States is intended. TEX.GOV'T CODE ANN. § 311.021(1) (Vernon 1988). While the courts have not yet had an opportunity to rule upon a First Amendment challenge to Penal Code section 36.03, related statutes prohibiting various types of threats have withstood First Amendment challenges. *See Collection Consultants, Inc. v. State,* 556 S.W.2d 787, 793–94 (Tex.Crim. App.1977) (op. on reh'g), *appeal dism'd,* 436 U.S. 901, 98 S.Ct. 2228, 56 L.Ed.2d 399 (1978) (telephone harassment statute does not violate defendant's free speech rights); *Puckett v. State,* 801 S.W.2d 188, 192–93 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd), *cert. denied,* —— U.S. ——, 112 S.Ct. 606, 116 L.Ed.2d 629 (1991) (retaliation statute prohibiting threats of unlawful action against a person on account of person's actions as a public servant, does not violate defendant's free speech rights).

In support of his argument, Tobias discusses five United States Supreme Court cases, the first one being *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam). In that case, when the defendant was attending an anti-war rally in Washington, D.C. in 1966, he was part of a small group discussion at which he stated he had received his "1–A" draft classification but was not going to report to his scheduled physical. He commented "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." and "They are not going to make me kill my black brothers." *Id.* at 706, 89 S.Ct. at 1401. Without discussion, the Court held the statute under which the defendant was convicted is constitutional on its face. *Id.* at 707, 89 S.Ct. at 1401. However, addressing a challenge to the sufficiency of the evidence, the Court opined:

We agree with petitioner that his only offense here was "a kind of very crude offensive method of stating a political opposition to the President." Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise.

394 U.S. at 708, 89 S.Ct. at 1402.

We find the facts in *Watts* distinguishable from those in the case before us. Whereas Watts made one statement to a crowd of people espousing his political opposition to the President, Tobias made a series of threats directed at three specific justices, which included autopsy photographs and an exposition on the effects of bullets on the body. Taken in context, Tobias's actions demonstrated his true intent to coerce the justices into ruling in his favor, and his actions were not mere political statements.

*Hess v. Indiana,* 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973), involved a statement made by the defendant at an anti-war demonstration. When police were attempting to clear the streets, Hess said "We'll take the f---ing street later." 414 U.S. at 107, 94 S.Ct. at 328. It was undisputed the comment was not directed to any person or group in particular, and the Court concluded it could not be said the defendant was advocating, in the normal sense, any action. 414 U.S. at 108–09, 94 S.Ct. at 328–29. Therefore, defendant's disorderly conduct conviction was reversed because the words spoken were constitutionally protected speech. 414 U.S. at 109, 94 S.Ct. at 329. Unlike the defendant in *Hess* whose comment was not directed to any specific person or group, Tobias directed his various threats to three particular justices, threatening them with specific acts of violence if they decided his case adversely to him.

In *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam), a leader of the Ku Klux Klan made a speech during which he said "We're not a revengent organization, but if our President, our Congress, our Supreme Court, continues to suppress the white, Caucasian race, it's possible that there might have to be some revengenance taken." 395 U.S. at 446, 89 S.Ct. at 1829. The Court reversed the defendant's conviction because the statute under

which he was convicted did not meet the test for determining whether a statute punishes for constitutionally protected speech. 395 U.S. at 448–49, 89 S.Ct. at 1830–31. The Court reiterated its prior holding that "the mere abstract teaching ... of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action." 395 U.S. at 448, 89 S.Ct. at 1830. *Brandenburg* is factually distinguishable inasmuch as Tobias clearly directed his statements to three particular victims, rather than merely advocating the possible use of violence by some unknown person not directed to any specific person or group.

Tobias next cites *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). The defendant in that case was a county employee who worked in a clerical capacity for the constable's office. She was dismissed after she was overheard stating to a co-worker, following the attempted assassination of President Reagan, "[I]f they go for him again, I hope they get him." 483 U.S. at 381, 107 S.Ct. at 2895. The Court held the defendant's statement was protected under the First Amendment because when considered in context (in the course of a conversation concerning cutbacks by Reagan in welfare and other services), it addressed a matter of public concern rather than a punishable threat. 483 U.S. at 387, 107 S.Ct. at 2898–99. Unlike the defendant in *Rankin,* Tobias's statements were not made during a discussion addressing a matter of public concern, but were made in documents designed to influence the three justices' decision, and the threatened acts were not to be committed by an unknown individual but by Tobias personally.

The last case relied upon by Tobias is *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), wherein the Court held that flag burning as a culmination of a political demonstration was expressive conduct protected by the First Amendment. We do not find *Johnson* supports Tobias's arguments that his statements were constitutionally protected. Unlike Tobias's actions, *Johnson* did not involve language which con-stituted a threat or was calculated to disturb the peace.

Tobias views his statements as more of a "political hyperbole" than a true threat, and therefore protected speech. We cannot accept this interpretation. We find the statements were in the nature of true threats directed to three particular individuals.

■ In *Puckett,* the court stated that "[t]he State of Texas undoubtedly has a valid and substantial interest in protecting the integrity of its judicial system and in allowing public servants, witnesses and prospective witnesses to perform their respective duties without interference from threats of physical violence." *Puckett,* 801 S.W.2d at 192. We find the same reasoning applies in the instant case. The State has a valid and substantial interest in protecting the integrity of the judicial system and in allowing its appellate justices to perform their respective duties without interference from threats of physical violence.

After thorough consideration of all the cited authorities, we hold the trial court properly denied Tobias's motion to quash the indictment because the enforcement of the coercion statute did not violate his right to freedom of speech. We overrule Tobias's third point of error.

■ Tobias contends in his fourth point of error that the indictment violated his due process rights, and the trial court improperly denied his motion to quash. He claims the indictment did not provide him with sufficient notice because it did not allege with particularity the specific actions which Tobias intended for the justices of the Second Court of Appeals to take.

Section 36.03 of the Penal Code provides that a person commits an offense if by means of coercion he influences or attempts to influence a public servant in a specific exercise of his official power. TEX.PENAL CODE ANN. § 36.03(a)(1).

The challenged indictment alleged, in pertinent part, that on March 18, 1992, Tobias:

Then and there intentionally and knowingly by means of coercion, to-wit: by threatening to commit the felony offense of mur-

der, attempt to influence Sam Day, a public servant, to-wit: a justice of the Court of Appeals for the Second Appellate District of Texas in the specific exercise of his official power, to-wit: his participation in the decision of a case pending before the court styled Richard Tobias vs. University of Texas System, University of Texas at Arlington School of Nursing, and the said Richard Brenton Tobias, while committing the action that attempted to influence Sam Day, a public servant, as heretofore alleged, was not engaged in an official action as a member of a governing body of a governmental entity.

Paragraph two: And, it is further presented in and to said court, that the said defendant, in the County of Tarrant and State aforesaid, on or about the 18th day of March, 1992, did then and there intentionally and knowingly by means of coercion, to-wit: by threatening to commit the felony offense of murder in the following threat contained in a document submitted to the court:

> Given that the courts will not hear grade appeals or teacher malpractice suites [sic]: will I have to exercise my right to keep and bear arms to obtain these rights? If so, I will fight, kill and die to obtain them! This is not a threat it is a fact! I will have this grade changed no matter the cost in life, money and time and yes after eight years and $50,000 dollars, I am prepared to use gun point and death if needed! But before I resort to my guns I will file at least two more suits.

Attempt to influence Sam Day, a public servant, to-wit: a justice of the Court of Appeals for the Second Appellate District of Texas in the specific exercise of his official power, to-wit: his participation in the decision of a case pending before the court styled, Richard Tobias vs. University of Texas System, University of Texas at Arlington School of Nursing, and the said Richard Brenton Tobias, while committing the action that attempted to influence by means of coercion, Sam Day, a public servant, as heretofore alleged, was not engaged in an official action as a member of a governing body of a governmental entity.

Counts two and three are identical to the above quote, except for the substitution of the other two complainants, Justice David Farris and Justice Larry Meyers.

Count four, which is identical to counts five and six except for the same substitution of complainants, alleged:

> Count four: And, it is further presented in and to said court, that the said defendant, in the County of Tarrant and State aforesaid, on or about the 21st day of May, 1992, did then and there intentionally and knowingly by means of coercion, to-wit: by threatening to commit the felony offense of aggravated assault, attempt to influence Sam Day, a public servant, to-wit: a justice of the Court of Appeals for the Second Appellate District of Texas in the specific exercise of his official power, to-wit: his participation in the decision of a motion for rehearing in a case pending before the court styled Richard Tobias v. University of Texas System, University of Texas at Arlington School of Nursing, and the said Richard Brenton Tobias, while committing the action that attempted to influence Sam Day, a public servant, as heretofore alleged, was not engaged in an official action as a member of a governing body of a governmental entity.

> Paragraph two: And, it is further presented in and to said court, that the said defendant, in the County of Tarrant and State aforesaid, on or about the 21st day of May, 1992, did then and there intentionally and knowingly by means of coercion, to-wit: by threatening to commit the felony offense of aggravated assault, the said threat contained in a document filed with the court stated:

>> If I should continue to loose [sic] as a result of their lies and tricks in court, I will seek vengeance at gun point! You must understand that after eight years and $50,000 that I am quite tired of all the lies and tricks.

> Attempt to influence Sam Day, a public servant, to-wit: a justice of the Court of Appeals for the Second Appellate District of Texas in the specific exercise of his official power, to-wit: his participation in

the decision of a motion for rehearing in a case pending before the court styled Richard Tobias v. University of Texas System, University of Texas at Arlington School of Nursing, and the said Richard Brenton Tobias, while committing the action that attempted to influence by means of coercion, Sam Day, a public servant, as heretofore alleged, was not engaged in an official action as a member of a governing body of a governmental entity.

█ This indictment tracks the language of section 36.03(a)(1). Generally, an indictment which tracks the statutory language of a penal statute is legally sufficient to provide the defendant with notice of the charged offense. *Marras v. State*, 741 S.W.2d 395, 401 (Tex.Crim.App.1987), *overruled on other grounds, Garrett v. State*, 851 S.W.2d 853, 856 (Tex.Crim.App.1993); *Beck v. State*, 682 S.W.2d 550, 554 (Tex.Crim.App.1985).

Tobias's contention is that he was denied due process because the indictment only alleges he attempted to influence each of the justices in their specific exercise of their official power, but does not allege whether the influence was to coerce the officials to act lawfully, unlawfully, or any other way with regard to Tobias's civil case against U.T.A. which was pending before the Second Court of Appeals.

In support of his argument, Tobias relies upon *State v. Hanson*, 793 S.W.2d 270 (Tex. App.—Waco 1990, no pet.), and the Practice Commentary accompanying section 36.03 of the Penal Code. The court of appeals in *Hanson* upheld the trial court's dismissal of the indictment because former section 36.-01(1)(F) was unconstitutionally vague when applied to the defendant's alleged conduct. *Id.* at 271. The Practice Commentary states:

"Coercion" is carefully defined in Section 36.01 to exclude legitimate threats, e.g., a threat of reprisal at the ballot box. The use of coercion is forbidden only if intended to induce specific conduct by the official; thus, a threat to expose or prosecute a corrupt official is not an offense if the

intent is to induce the official to act according to the law.

Seth S. Searcy III & James R. Patterson, Practice Commentary, Tex.Penal Code Ann. § 36.03 (Vernon 1974).[12]

We find both *Hanson* and the Practice Commentary to be inapplicable because they dealt with another manner of coercion specified by a former version of the statute—to unlawfully take or withhold action as a public servant, or to cause a public servant to unlawfully take or withhold action.

We hold the indictment did not violate Tobias's due process rights, and the trial court properly denied his motion to quash on these grounds. Tobias's fourth point of error is overruled.

█ In his fifth point of error, Tobias claims the trial court should have granted his motion to quash the indictment because it violated the equal protection clause of the Fourteenth Amendment to the United States Constitution.

Tobias presents two arguments on appeal: he was subjected to improper selective prosecution because other individuals who allegedly threatened members of the Second Court of Appeals were not prosecuted under section 36.03; and the statutory exception violates the equal protection clause.

The pertinent portion of Tobias's motion to quash the indictment states:

The Defendant submits that Section 36.-03(c) and its application in the present case violates the Equal Protection Clause contained in the Fourteenth Amendment to the United States Constitution because if the Defendant was a member of a governing body of a governmental entity, i.e. the Legislature, the Attorney General's Office, the Governor's Office, or the Court of Criminal Appeals, his conduct would not be illegal.

Thus, a State Senator or Representative, the Governor, the Attorney General, the Governor, or a Judge of the Court of Criminal Appeals can make the exact threats as alleged in the present case, and the con-

---

12. The Practice Commentary is not included in the 1994 edition of section 36.03 published by

West Publishing Company.

duct is not illegal, even if exactly the same result is desired.

To state this in another way, if a member of the Board of Regents of the University of Texas or the University of Texas at Arlington, a governmental entity, had made the exact same threats as alleged to have been made by the Defendant, Section 36.03 of the Penal Code would have no application.

The University of Texas at Arlington is also a party to the civil lawsuit wherein the Defendant allegedly filed documents making threats.

The trial court held a pre-trial hearing on the motion. No evidence was introduced at the hearing. After brief argument by Tobias's counsel, the court overruled the motion to quash. Counsel's argument tracked the theory espoused in his motion.

In support of his selective prosecution theory on appeal, Tobias urges this Court to consider Defense Exhibit 3, tendered by him in a bill of exception at the close of all evidence at the guilt-innocence phase.[13] When Tobias's counsel tendered Exhibit 3, he informed the court the documents "go to the motive and the bias and the knowledge and the credibility of the justices of the Court of Appeals in that those letters are threats from someone else, not Mr. Tobias, but threats from another person at another time, threats of death that the Court made a ruling that they would not be admitted in the case." Tobias has not complained on appeal that the court erred in excluding Exhibit 3. After tendering the exhibit, Tobias did not re-urge his motion to quash the indictment.

Tobias's motion to quash addressed only the legal question of whether section 36.03 violates the equal protection clause because certain groups of people are granted an exception and are protected from prosecution under the statute. Because Tobias's argument that others who had threatened members of the Court were not prosecuted was never presented to the trial court in the motion to quash the indictment, or at the

hearing on the motion, we will not consider this argument on appeal. TEX.R.APP.P. 52(a). Neither will we consider Defendant's Exhibit 3 because the stated purpose of the exhibit was to challenge the credibility of the complaining witnesses. The exhibit did not relate to the grounds of Tobias's pre-trial motion to quash.

■ Tobias next asserts the statutory exception of section 36.03(c) violates the equal protection clause because if the person who attempts to influence the public servant (using the exact language as Tobias used in the documents he filed in the Second Court of Appeals) is a member of the governing body of a governmental entity, that person is exempt from prosecution.

To the contrary, the statutory exception specifically provides that the action must be an "official action taken by the member of the governing body." TEX.PENAL CODE ANN. § 36.03(c) (emphasis added). We find that conduct such as Tobias's—threatening specific criminal acts of violence with a firearm against an appellate justice—could never constitute an "official action" within the meaning of the exception of section 36.03(c). As stated earlier in this opinion, in enacting a statute it is presumed that compliance with the constitutions of this state and the United States is intended. TEX.GOV'T CODE ANN. § 311.021(1). Applying this presumption to the facts of the instant case, we hold that the statutory exception of section 36.03(c) does not on its face violate Tobias's equal protection rights. The fifth point of error is overruled.

## PRO SE BRIEFS

We next address the matter of two supplemental briefs tendered by Tobias, pro se. On the morning of oral argument, Richard Tobias, pro se, sought leave to file a supplement to the brief filed by his counsel. After oral argument, Tobias's counsel verbally informed the clerk of this court that counsel desired to have the pro se supplemental brief filed, although counsel did not indicate he

13. The exhibit consists of threatening letters sent in 1988 by a defendant in an unrelated case to the clerk and several justices of the Second Court of Appeals, and a letter from the Sixth Court of

Appeals to the Texas Board of Pardons and Paroles stating the clerk and justices on that court had received threatening letters from the same defendant.

adopted his client's brief. The State tendered a post-submission reply to the pro se supplemental brief. Tobias then tendered an additional pro se reply. All these documents have been ordered "received" by the court, but have not yet been filed.

■ Tobias's two pro se supplemental briefs raise two new and distinct points of error, and numerous additional new legal arguments which were not raised in his original brief.

■ Generally, where an appellant is represented by counsel on appeal and counsel has filed a brief, the appellant is not entitled to file a pro se brief—there is no Texas constitutional right to hybrid representation. *Turner v. State*, 805 S.W.2d 423, 425 n. 1 (Tex.Crim.App.), *cert. denied*, — U.S. —, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). Pro se briefs present nothing for review. *Id.*

However, the Rules of Appellate Procedure provide that briefs may be supplemented at any time "when justice requires upon such reasonable terms as the court may prescribe." TEX.R.APP.P. 74(*o*). Accordingly, in the interest of justice we will consider the new material contained in Tobias's first supplemental brief, and the State's reply thereto. *See Rochelle v. State*, 791 S.W.2d 121, 124 (Tex.Crim.App.1990). The clerk of the court is ordered to file these documents as of the dates tendered.

With regard to Tobias's subsequent reply to the State's brief, Tobias's counsel has not requested this court to file or consider this document. We order this document filed with the notation that the court will not consider any new issues or points of error raised in the document, and evidence not in the statement of facts will not be considered. **No further briefs or replies will be filed.**

In point of error six of his pro se brief Tobias contends: the State improperly obtained his medical records; the trial court set an unreasonable bond; and he was denied a speedy trial.

*Seizure of medical records:*

Tobias complains the State improperly obtained his medical records from a drug and alcohol treatment program in violation of Rules 510 and 512 of the Texas Rules of Criminal Evidence. TEX.R.CRIM.EVID. 510 and 512. We need not further address this contention because even assuming arguendo these medical records were improperly obtained, Tobias has not shown how he was harmed inasmuch as the records were never admitted into evidence during his trial.

*Reasonable bond:*

■ Tobias asserts the trial court improperly set his pre-trial bond at $500,000. This issue is moot because Tobias has been accorded a trial on the underlying indictment. *See Taylor v. State*, 676 S.W.2d 135, 136 (Tex.Crim.App.1984) (appeal of denial of pre-trial bond rendered moot where accused accorded trial on prior indictment). Additionally, this issue has already been addressed by this court, which determined that the setting of Tobias's pre-trial bond at $500,000 was reasonable. *Ex parte Tobias*, No. 2–93–051–CR (Tex.App.—Fort Worth June 15, 1993, pet. dism'd) (not designated for publication).[14] Under the "law of the case" doctrine, this earlier finding regarding the reasonableness of the pre-trial bond governs its resolution in the present appeal. *See Satterwhite v. State*, 858 S.W.2d 412, 430 (Tex.Crim.App.), *cert. denied*, — U.S. —, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993).

*Speedy trial:*

■ Without citing any legal authority, Tobias contends he has been denied his right to a speedy trial. The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The same right is provided to an accused under the Texas Constitution. TEX. CONST. art. I § 10; *Hull v.*

14. The three-justice panel in that appeal was composed of three visiting justices assigned by the Texas Supreme Court. *See* TEX.GOV'T CODE ANN. § 74.003 (Vernon 1988 & Supp.1994).

*State,* 699 S.W.2d 220, 221 (Tex.Crim.App. 1985).

■ In determining whether an accused has been denied the right to a speedy trial, we must employ a balancing test applying the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192.

■ The length of delay is measured from the time the defendant is formally accused or arrested until the time of trial. *U.S. v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); *Hull,* 699 S.W.2d at 221. No specific length of delay automatically constitutes a violation of the right, and until there is some delay that is presumptively prejudicial there is no necessity for inquiry into the other factors of the balancing test. *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192.

Tobias bases his claim solely upon a delay of approximately nine months between his arrest and trial. We find this length of delay is not presumptively prejudicial so as to require further examination of Tobias's speedy trial claim. *Cf. Barker,* 407 U.S. at 534, 92 S.Ct. at 2194 (delay of five years); *Chapman v. Evans,* 744 S.W.2d 133, 136 (Tex.Crim. App.1988) (orig. proceeding) (two years, six months); *Grayless v. State,* 567 S.W.2d 216, 222 (Tex.Crim.App. [Panel Op.] 1978) (two years, nine months); *Turner v. State,* 504 S.W.2d 843, 845 (Tex.Crim.App.1974) (four years, eight months). Moreover, Tobias has failed to address any of the remaining factors, including a showing of how he was prejudiced by a nine-month delay between his arrest and trial.

Tobias's sixth point of error is overruled.

■ In the seventh point of error in his pro se brief, Tobias claims Penal Code section 36.03 violates his freedoms of speech and petition for redress, and that the statute is unconstitutionally vague and overbroad. We have addressed and overruled these conten-

tions in points of error three and four. However, as discussed by the State in its reply brief, Tobias's first supplemental brief relies upon one additional case in which the Ninth Circuit declared the Montana intimidation statute unconstitutionally overbroad. *See Wurtz v. Risley,* 719 F.2d 1438, 1443 (9th Cir.1983).

In that case, the statute was found to be overbroad because its statutory language applied so broadly to threats of minor infractions or threats unrelated to any action that a great deal of protected speech was brought within its scope, including "threats" that contain ideas or advocacy such as picketing to achieve a social or political action. *Id.* at 1442.

In the case at bar, the statute is much more narrowly drawn by limiting its scope to threats of a public official in an attempt to influence the exercise of the official's power. We agree with the State that Penal Code section 36.03 is much more akin to the federal retaliation statute upheld by the Seventh Circuit in *United States v. Velasquez,* 772 F.2d 1348, 1356–58 (7th Cir.1985), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). That court reasoned:

> A threat to break a person's knees or pulverize his automobile as punishment for his having given information to the government is a statement of intention rather than an idea or opinion and is not part of the marketplace of ideas.

*Id.* at 1357.

■ Lastly, Tobias alleges section 36.03 is vague because section 36.01 no longer defines "coercion." This argument has no merit—the definition of "coercion" has simply been moved to a different section of the Penal Code. *See* TEX.PENAL CODE ANN. § 1.07(a)(9) (Vernon 1994).

We hold that Penal Code section 36.03 is not unconstitutionally vague and overbroad, and we overrule Tobias's seventh point of error.

The judgment of the trial court is affirmed.[15]

15. Tobias has filed a pro se "Motion To Release On Bail." Having carefully considered the motion, the court denies the requested relief.