TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00759-CR







Ruben Guerrero, Appellant



v.




The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY


NO. 499,589, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING







A jury found appellant Ruben Guerrero guilty of interfering with the duties of a
peace officer, after which the court assessed punishment at incarceration for 180 days. See Tex.
Penal Code Ann. § 38.15(a)(1) (West Supp. 2000). Appellant contends the evidence is legally and
factually insufficient to sustain the jury's verdict. We will overrule these contentions and affirm.

On March 30, 1998, Austin Police Officers Robert Hawkins and Michael Burgh
were dispatched to an address from which a "911 hangup" call had been received. A woman
identified as Janice Gientke opened the door of the residence in response to Hawkins's knock. 
Gientke told the officers that she was alone in the house and had not called 911. Gientke seemed
evasive and nervous, causing the officers to suspect that she was under duress. As Gientke closed
the door and the officers turned to walk away, they heard a male voice angrily exclaim, "You
better close the door, you fucking bitch."

The officers then heard shouting and, through a window, saw Gientke and a man
identified as appellant struggling for control of a purse. Suspecting that appellant was assaulting
Gientke or holding her against her will, Hawkins began to knock on the door and shout, "Police,
come to the door." There was no response at first, but eventually the door opened and appellant
stepped outside, closing the door behind him. Appellant was obviously intoxicated. He refused
to answer the officers' questions and told them to leave. Hawkins explained to appellant that the
officers needed to enter the house and speak to Gientke. Finally, appellant said, "Okay, I will let
you talk to her, but I am going to go get her." With that, appellant reentered the house, told the
officers to remain outside, and closed the door.

Fearing that appellant was retrieving a weapon, the officers decided to enter the
house. They hesitated, however, when they heard barking and saw through the window a large
dog "lunging around and jumping." Hawkins described the dog as being about eighteen inches tall
and weighing ninety pounds. Burgh testified that the dog "came up to about my waist." Gientke
testified that the dog was a giant Schnauzer. A photograph of the dog was introduced in evidence,
but the copy in the appellate record is unclear. Hawkins called out to appellant to restrain the dog. 
Appellant seized the dog by its collar, opened the door, and told the officers they could enter.

Hawkins took Gientke into a bedroom to speak to her privately, leaving Burgh in
the living room with appellant and the dog. As Hawkins attempted to interview Gientke and
examine her for injuries, he heard barking and shouts from the living room. He ran to the other
room, where he saw the dog, still being held by appellant, barking and snarling at Burgh. 
Appellant told the officers that he would release the dog if they did not leave the house. Both
officers believed that the dog was capable of causing them serious injury. Hawkins told appellant
that he would shoot the dog if appellant released it. Appellant became calmer, secured the dog
in another room of the house, and went outside with the officers, where he was arrested.

Gientke testified for the defense. She said that she did not call 911 on the night in
question and told the officers that when they came to her door. Gientke testified that she and
appellant were not arguing, that they did not have a physical struggle, and that the window blinds
were drawn. When the officers returned, appellant answered the door and allowed the officers
to enter. Appellant held the dog's collar while Gientke spoke to the officers. Gientke testified that
her dog is "very laid-back" and "real friendly," and did not lunge at the officers or growl at them. 
Gientke did not hear appellant threaten to release the dog, and said that in any event the dog had
never bitten anyone. She also said that appellant never shut the door to prevent the officers from
entering the house.

The information in this cause alleged that appellant:


with criminal negligence interrupt[ed], disrupt[ed], impede[d] and otherwise
interfere[d] with a peace officer, to wit: R. Hawkins, while the peace officer was
performing a duty and exercising authority imposed and granted by law, to wit:
Defendant closed the door on R. Hawkins and threatened to set his dog loose on
R. Hawkins.



See id. The court's charge to the jury tracked these allegations, and authorized appellant's
conviction if the jury found that he negligently interfered with a peace officer by either closing the
door on Hawkins or threatening to set his dog loose on Hawkins. Appellant contends the evidence
is legally and factually insufficient to sustain his conviction on either theory.

In determining the legal sufficiency of the evidence to support a criminal conviction,
the question is whether, after viewing all the evidence in the light most favorable to the verdict,
any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); Griffin v. State, 614 S.W.2d 155, 158-59
(Tex. Crim. App. 1981). In a factual sufficiency review, the evidence is not viewed in the light
most favorable to the verdict. Instead, all the evidence is considered equally, including the
testimony of defense witnesses and the existence of alternative hypotheses. Orona v. State, 836
S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). A factual sufficiency review asks whether
a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that
the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine
confidence in the jury's determination. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). A verdict may be set aside only if a finding of guilt beyond a reasonable doubt is clearly
wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State,
823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed).

With regard to the allegation that he threatened to "set his dog loose" on Hawkins,
appellant relies on subsection (d) of section 38.15, which provides that it is a defense to
prosecution "that the interruption, disruption, impediment, or interference alleged consisted of
speech only." Tex. Penal Code Ann. § 38.15(d). The officers testified that appellant did not
release the dog, despite his threats to do so. Appellant argues that the alleged threat consisted of
speech only, and thus cannot serve as the basis for conviction. The State responds by urging that
the statutory defense should be limited to speech that is constitutionally protected. Threats of
physical violence are not constitutionally protected speech. See Webb v. State, 991 S.W.2d 408,
415 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd); Tobias v . State, 884 S.W.2d 571, 580-81
(Tex. App.--Fort Worth 1994, pet. ref'd). Hence, the State concludes that subsection (d) does not
apply to appellant's threat to release the dog.

We need not decide whether the section 38.15(d) defense is limited to
constitutionally protected speech because appellant's threat to release the dog was not "speech
only." The oral threat must be considered in the context in which it was made. Appellant was
holding a large, apparently vicious dog by its collar. The dog was barking and lunging at the
officers. The officers testified that they considered the dog capable of inflicting serious injuries. 
While the record does not reflect how the dog came to be in the living room, the jury could
reasonably infer that appellant used the dog to intimidate the officers. On this record, the alleged
threat to "set his dog loose on" Officer Hawkins was conveyed by appellant's actions as well as
by his words.(1) 

Viewing the evidence in the light most favorable to the verdict, the jury could
rationally conclude that appellant interfered with Hawkins's performance of his duties by
"threaten[ing] to set his dog loose" on the officer. The evidence remains sufficient even when all
the evidence is viewed equally, including Gientke's defensive testimony. We must maintain
appropriate deference to the jury's verdict by finding error only when the record clearly indicates
that the verdict is wrong and manifestly unjust. Johnson, 23 S.W.3d at 9; Reina v. State, 940
S.W.2d 770, 773 (Tex. App.--Austin 1997, pet. ref'd). A decision is not manifestly unjust simply
because the fact-finder resolved conflicting views of the evidence in the State's favor. Roise v.
State, 7 S.W.3d 225, 233 (Tex. App.--Austin 1999, pet. ref'd).

When a jury returns a general verdict of guilty on an information alleging
alternative theories of committing the same offense, the verdict stands if the evidence supports any
of the alleged theories. Brooks v. State, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999). Thus,
we need not decide whether appellant violated section 38.15 by closing the door on the officer. 
Points of error one and two are overruled.

The judgment of conviction is affirmed.



 __________________________________________

 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Jones*

Affirmed

Filed: January 11, 2001

Do Not Publish 





* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Appellant does not contend that his use of the dog to threaten the officer was symbolic
speech protected by the First Amendment.


n v. State, 614 S.W.2d 155, 158-59
(Tex. Crim. App. 1981). In a factual sufficiency review, the evidence is not viewed in the light
most favorable to the verdict. Instead, all the evidence is considered equally, including the
testimony of defense witnesses and the existence of alternative hypotheses. Orona v. State, 836
S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). A factual sufficiency review asks whether
a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that
the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine
confidence in the jury's determination. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). A verdict may be set aside only if a finding of guilt beyond a reasonable doubt is clearly
wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State,
823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed).

With regard to the allegation that he threatened to "set his dog loose" on Hawkins,
appellant relies on subsection (d) of section 38.15, which provides that it is a defense to
prosecution "that the interruption, disruption, impediment, or interference alleged consisted of
speech only." Tex. Penal Code Ann. § 38.15(d). The officers testified that appellant did not
release the dog, despite his threats to do so. Appellant argues that the alleged threat consisted of
speech only, and thus cannot serve as the basis for conviction. The State responds by urging that
the statutory defense should be limited to speech that is constitutionally protected. Threats of
physical violence are not constitutionally protected speech. See Webb v. State, 991 S.W.2d 408,
415 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd); Tobias v . State, 884 S.W.2d 571, 580-81
(Tex. App.--Fort Worth 1994, pet. ref'd). Hence, the State concludes that subsection (d) does not
apply to appellant's threat to release the dog.

We need not decide whether the section 38.15(d) defense is limited to
constitutionally protected speech because appellant's threat to release the dog was not "speech
only." The oral threat must be considered in the context in which it was made. Appellant was
holding a large, apparently vicious dog by its collar. The dog was barking and lunging at the
officers. The officers testified that they considered the dog capable of inflicting serious injuries. 
While the record does not reflect how the dog came to be in the living room, the jury could
reasonably infer that appellant used the dog to intimidate the officers. On this record, the alleged
threat to "set his dog loose on" Officer Hawkins was conveyed by appellant's actions as well as
by his words.(1) 

Viewing the evidence in the light most favorable to the verdict, the jury could
rationally conclude that appellant interfered with Hawkins's performance of his duties by
"threaten[ing] to set his dog loose" on the officer. The evidence remains sufficient even when all
the evidence is viewed equally, including Gientke's defensive testimony. We must maintain
appropriate deference to the jury's verdict by finding error only when the record clearly indicates
that the verdict is wrong and manifestly unjust. Johnson, 23 S.W.3d at 9; Reina v. State, 940
S.W.2d 770, 773 (Tex. App.--Austin 1997, pet. ref'd). A decision is no