# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-99-00759-CR

**Ruben Guerrero, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. 499,589, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

A jury found appellant Ruben Guerrero guilty of interfering with the duties of a peace officer, after which the court assessed punishment at incarceration for 180 days. *See* Tex. Penal Code Ann. § 38.15(a)(1) (West Supp. 2000). Appellant contends the evidence is legally and factually insufficient to sustain the jury's verdict. We will overrule these contentions and affirm.

On March 30, 1998, Austin Police Officers Robert Hawkins and Michael Burgh were dispatched to an address from which a "911 hangup" call had been received. A woman identified as Janice Gientke opened the door of the residence in response to Hawkins's knock. Gientke told the officers that she was alone in the house and had not called 911. Gientke seemed evasive and nervous, causing the officers to suspect that she was under duress. As Gientke closed the door and the officers turned to walk away, they heard a male voice angrily exclaim, "You better close the door, you fucking bitch."

The officers then heard shouting and, through a window, saw Gientke and a man identified as appellant struggling for control of a purse. Suspecting that appellant was assaulting Gientke or holding her against her will, Hawkins began to knock on the door and shout, "Police, come to the door." There was no response at first, but eventually the door opened and appellant stepped outside, closing the door behind him. Appellant was obviously intoxicated. He refused to answer the officers' questions and told them to leave. Hawkins explained to appellant that the officers needed to enter the house and speak to Gientke. Finally, appellant said, "Okay, I will let you talk to her, but I am going to go get her." With that, appellant reentered the house, told the officers to remain outside, and closed the door.

Fearing that appellant was retrieving a weapon, the officers decided to enter the house. They hesitated, however, when they heard barking and saw through the window a large dog "lunging around and jumping." Hawkins described the dog as being about eighteen inches tall and weighing ninety pounds. Burgh testified that the dog "came up to about my waist." Gientke testified that the dog was a giant Schnauzer. A photograph of the dog was introduced in evidence, but the copy in the appellate record is unclear. Hawkins called out to appellant to restrain the dog. Appellant seized the dog by its collar, opened the door, and told the officers they could enter.

Hawkins took Gientke into a bedroom to speak to her privately, leaving Burgh in the living room with appellant and the dog. As Hawkins attempted to interview Gientke and examine her for injuries, he heard barking and shouts from the living room. He ran to the other room, where he saw the dog, still being held by appellant, barking and snarling at Burgh. Appellant told the officers that he would release the dog if they did not leave the house. Both officers believed that the

2

dog was capable of causing them serious injury. Hawkins told appellant that he would shoot the dog if appellant released it. Appellant became calmer, secured the dog in another room of the house, and went outside with the officers, where he was arrested.

Gientke testified for the defense. She said that she did not call 911 on the night in question and told the officers that when they came to her door. Gientke testified that she and appellant were not arguing, that they did not have a physical struggle, and that the window blinds were drawn. When the officers returned, appellant answered the door and allowed the officers to enter. Appellant held the dog's collar while Gientke spoke to the officers. Gientke testified that her dog is "very laid-back" and "real friendly," and did not lunge at the officers or growl at them. Gientke did not hear appellant threaten to release the dog, and said that in any event the dog had never bitten anyone. She also said that appellant never shut the door to prevent the officers from entering the house.

The information in this cause alleged that appellant:

> with criminal negligence interrupt[ed], disrupt[ed], impede[d] and otherwise interfere[d] with a peace officer, to wit: R. Hawkins, while the peace officer was performing a duty and exercising authority imposed and granted by law, to wit: Defendant closed the door on R. Hawkins and threatened to set his dog loose on R. Hawkins.

*See id.* The court's charge to the jury tracked these allegations, and authorized appellant's conviction if the jury found that he negligently interfered with a peace officer by either closing the door on Hawkins or threatening to set his dog loose on Hawkins. Appellant contends the evidence is legally and factually insufficient to sustain his conviction on either theory.

3

In determining the legal sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). In a factual sufficiency review, the evidence is not viewed in the light most favorable to the verdict. Instead, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict may be set aside only if a finding of guilt beyond a reasonable doubt is clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd untimely filed).

With regard to the allegation that he threatened to "set his dog loose" on Hawkins, appellant relies on subsection (d) of section 38.15, which provides that it is a defense to prosecution "that the interruption, disruption, impediment, or interference alleged consisted of speech only." Tex. Penal Code Ann. § 38.15(d). The officers testified that appellant did not release the dog, despite his threats to do so. Appellant argues that the alleged threat consisted of speech only, and thus cannot serve as the basis for conviction. The State responds by urging that the statutory defense should be

limited to speech that is constitutionally protected. Threats of physical violence are not constitutionally protected speech. *See Webb v. State*, 991 S.W.2d 408, 415 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *Tobias v . State*, 884 S.W.2d 571, 580-81 (Tex. App.—Fort Worth 1994, pet. ref'd). Hence, the State concludes that subsection (d) does not apply to appellant's threat to release the dog.

We need not decide whether the section 38.15(d) defense is limited to constitutionally protected speech because appellant's threat to release the dog was not "speech only." The oral threat must be considered in the context in which it was made. Appellant was holding a large, apparently vicious dog by its collar. The dog was barking and lunging at the officers. The officers testified that they considered the dog capable of inflicting serious injuries. While the record does not reflect how the dog came to be in the living room, the jury could reasonably infer that appellant used the dog to intimidate the officers. On this record, the alleged threat to "set his dog loose on" Officer Hawkins was conveyed by appellant's actions as well as by his words.[1]

Viewing the evidence in the light most favorable to the verdict, the jury could rationally conclude that appellant interfered with Hawkins's performance of his duties by "threaten[ing] to set his dog loose" on the officer. The evidence remains sufficient even when all the evidence is viewed equally, including Gientke's defensive testimony. We must maintain appropriate deference to the jury's verdict by finding error only when the record clearly indicates that the verdict is wrong and manifestly unjust. *Johnson*, 23 S.W.3d at 9; *Reina v. State*, 940

---

[1] Appellant does not contend that his use of the dog to threaten the officer was symbolic speech protected by the First Amendment.

S.W.2d 770, 773 (Tex. App.—Austin 1997, pet. ref'd). A decision is not manifestly unjust simply because the fact-finder resolved conflicting views of the evidence in the State's favor. *Roise v. State*, 7 S.W.3d 225, 233 (Tex. App.—Austin 1999, pet. ref'd).

When a jury returns a general verdict of guilty on an information alleging alternative theories of committing the same offense, the verdict stands if the evidence supports any of the alleged theories. *Brooks v. State*, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999). Thus, we need not decide whether appellant violated section 38.15 by closing the door on the officer. Points of error one and two are overruled.

The judgment of conviction is affirmed.

_____

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Jones[*]

Affirmed

Filed: January 11, 2001

Do Not Publish

_____

[*] Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).